ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED
No. 12-5375

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

JICARILLA APACHE NATION,

Plaintiff - Appellant

v.

UNITED STATES DEPARTMENT OF THE INTERIOR;
SALLY JEWELL, SECRETARY OF THE DEPARTMENT OF THE INTERIOR,

Defendants - Appellees

MERIT ENERGY COMPANY,

Intervenor for Defendant - Appellee

BRIEF OF APPELLANT

APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
THE HON. JOHN D. BATES, DISTRICT JUDGE
(DIST. CT. NO. 1:10-CV-02052-JDB)

Donald H. Grove
Nordhaus Law Firm, LLP
1401 K St. N.W., Suite 801
Washington, D.C.  20005
(202) 530-1270

August 5, 2013                     Counsel for Appellants

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A.    *Parties and Amici*

The parties who appeared before the district court were Plaintiff Jicarilla Apache Nation, a federally recognized Indian tribe; Defendants United States Department of the Interior and Ken Salazar, Secretary of the Interior; and Defendant-Intervenor Merit Energy Company. There were no *amici curiae*.

B.    *Rulings Under Review*

The ruling under review is the Memorandum Opinion of the United States District Court for the District of Columbia in *Jicarilla Apache Nation v. U.S. Dep't. of the Interior*, Civ. No. 10-2052 (Sept. 26, 2012) (Hon. John D. Bates, J.), which upheld the decision of the Interior Board of Land Appeals in *Merit Energy Co. v. Minerals Mgmt. Serv.*, 172 IBLA 137 (Aug. 3, 2007).  The district court granted Defendant-Appellees' motions for summary judgment and denied Plaintiffs-Appellants' motion for summary judgment. The district court decision is reported at 892 F. Supp. 2d 285 (D.D.C. 2012).

C.    *Related Cases*

This case has not previously been before this Court or any other court, and counsel for Plaintiff is not aware of any related cases pending in this or any other court.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

GLOSSARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xv

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . 1

STATUTES AND REGULATIONS – **STATEMENT AS TO ADDENDUM** . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A.   Merit's Oil & Gas Leases With Jicarilla . . . . . . . . . . . . . . . . . . . . . . . 5

     B.   The Order to Perform . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     C.   The Notice of Noncompliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     D.   Initial Proceedings at the Office of Hearings and Appeals . . . . . . . . 9

     E.   Proceedings Before the Interior Board of Land Appeals . . . . . . . . 10

     F.   Jicarilla's Initial Challenge to the IBLA decision in the United States District Court for the District of Columbia . . . 11

     G.   Proceedings On Remand at the Office of Hearings and Appeals . . . 11

     H.   Jicarilla's Subsequent Challenge to the IBLA decision in the United States District Court for the District of Columbia . . . . . . . . 12

SUMMARY OF APPELLANT'S ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

I.      STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.     THE STATUTORY AND REGULATORY FRAMEWORK CREATES
        DISTINCT METHODS FOR CHALLENGING ORDERS TO
        PERFORM AND PENALTIES ASSESSED FOR VIOLATION OF
        SUCH ORDERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        A.     30 C.F.R. Part 290, Appeals from Orders and Decisions . . . . . . . . . 16

        **B.     Congress addresses the need for penalities in FOGRMA.** . . . . . 19


               C.     30 C.F.R. Part 241: The Implementation of FOGRMA
                      Penalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

               1.     30 C.F.R. Part 243 Highlights the Distinction Between Part
                      290 Appeals from Orders and Part 241 Hearings on
                      Penalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

               2.     Part 290 and Part 241 proceedings have different time
                      limits and are heard in different fora, reflecting the intent
                      that they serve different purposes . . . . . . . . . . . . . . . . . . . . . . 23

        D.     Federal Oil and Gas Royalty Simplification and Fairness Act of
               1996 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

III.    THE IBLA RULING MISREADS THE LAW AND IGNORES THE
        IMPORTANCE OF ADMINISTRATIVE FINALITY, CREATING AN
        INCOHERENT RESULT NOT ENTITLED TO DEFERENCE . . . . . . . . 26

        A.     The IBLA Misinterpreted the Statutes and Regulations in
               Concluding that Orders May Be Challenged Under Part 241,
               Rather than Exclusively Under Part 290 . . . . . . . . . . . . . . . . . . . . . 27

B.    The IBLA Also Undermined the Importance of Administrative
      Finality in the Department's Proceedings . . . . . . . . . . . . . . . . . . . . . . 33

      1.    Treatment of Administrative Finality Below . . . . . . . . . . . . . 33

      2.    The timely filing requirement of 30 C.F.R. § 290.3 is
            jurisdictional and the Office of Hearings and Appeals
            ("OHA") has no authority to waive a jurisdictional
            requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

      3.    The requirement in 30 C.F.R. § 290.3, that notices of
            appeal be timely filed, is binding upon MMS, and on the
            Office of Hearings and Appeals, and may not be waived . . . 36

      4.    The doctrine of administrative finality precludes
            reconsideration of the order to perform . . . . . . . . . . . . . . . . 37

      5.    The exceptions to the doctrine of administrative finality do
            not apply to Merit in this case . . . . . . . . . . . . . . . . . . . . . . . . 39

C.    Deference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

D.    Righting a Wrong – Proposed Rule Would Supercede the IBLA's
      *Merit* Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

E.    Disparate treatment of lessees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

F.    Trust duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

# TABLE OF AUTHORITIES

## CASES

Accardi v. Shaughnessy, 347 U.S. 260 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Associates v. City of Newark, 424 F. Supp. 984 (D.N.J. 1977) . . . . . . . . . . . . . 36

Auer v. Robbins,  519 U.S. 452 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Beverly Health & Rehab. Servs. v. Thompson, 223 F. Supp. 2d 73
   (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Bolack Minerals Co. v. Norton, 370 F. Supp. 2d 161 (D.D.C. 2005) . . . . . . . . . 38

Bowles v. Russell, 551 U.S. 205 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 39

BP America Prod. Co. v. Burton, 549 U.S. 84, 99 (2006),
   aff'g  410 F.3d 722 (D. C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 51

Browder v. Dir., Ill. Dep't. of Corr., 434 U.S. 257 (1978) . . . . . . . . . . . . . . . . . 45

Chamber of Commerce v. SEC, 412 F.3d 133 (D.C. Cir. 2005) . . . . . . . . . . . . . 16

Chapman v. Sheridan Wyoming Co., 338 U.S. 621 (1950) . . . . . . . . . . . . . . . . . 36

Christopher v. SmithKline Beecham Corp. , 132 S. Ct. 2156 (2012) . . . . . . . . . 47

Chrysler Corp. v. Brown, 441 U.S. 281 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Cobell v. Norton, 240 F.3d 1081 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 50

Cobell v. Norton, 240 F3d. 1081 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 52

Comcast Corp. v. FCC, 526 F.3d 763 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . 45

Defenders of Wildlife v. Gutierrez, 532 F.3d 913 (D.C. Cir. 2008) . . . . . . . . . . 15

v

Eagle Broad. Group, Ltd. v. FCC, 563 F.3d 543 (D.C. Cir. 2009) . . . . . . . . . . . 43

Ehlert v. United States, 402 U.S. 99 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Gardebring v. Jenkins, 485 U.S. 415 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Gonzales v. Oregon, 546 U.S. 243 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Gose v. United States Postal Serv., 451 F.3d 831 (Fed. Cir. 2006) . . . . . . . . 46, 47

Hickel v. Oil Shale Corp., 400 U.S. 48 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Jicarilla Apache Nation v. U.S. Dept. of the Interior, Civ. No. 10-2052
  (Sept. 26, 2012) (Hon. John D. Bates, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Jicarilla Apache Nation v. U.S. Dep't of Interior, No. 08-0316 (JDB) . . . . . . . . 11

*Jicarilla Apache Nation v. U.S. Dep't. of the Interior, Civ. No. 10-2052
  (D.D.C. 2012), 892 F. Supp. 2d 285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12, 33

Jicarilla Apache Tribe v. Supron Energy Corp., 728 F.2d 1555 (10th Cir. 1984)
  (Seymour, J., concurring in part and dissenting in part), adopting as majority
  as modified en banc, 728 F.2d 855 (10th Cir. 1986), supplemented,
  793 F.2d 1171 (10th Cir. 1986), cert. denied, 479 U.S. 970 (1986) . . . . . . . . 52

Jicarilla v. Dep't of Interior, 613 F.3d 1112 (D.C. Cir. 2010) . . . . . . . . . . . 32, 50

Jicarilla v. U.S. Dep't of Interior, 648 F. Supp. 2d 140 (D.D.C. 2009) . . . . . . . . 11

Kearfott Guidance & Navigation Corp. v. Rumsfeld,
  320 F.3d 1369 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Kenai Oil v. Dep't of Interior, 671 F.2d 383 (10th Cir. 1982) . . . . . . . . . . . . . . . 52

Lincoln v. Vigil, 508 U.S. 182 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

McCulloch Interstate Gas Corp. v. Federal Power Comm'n,
  536 F.2d 910 (l0th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

McKay v. Wahlenmuier, 226 F.2d 35 (D.C. Cir. 1955) . . . . . . . . . . . . . . . . . . . . 36

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,
    463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.,
    463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Nat'l Assoc. of Home Builders v. Defenders of Wildlife,
    551 U.S. 646 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Seminole Nation v. United States, 316 U.S. 286 (1942) . . . . . . . . . . . . . . . . . . . 52

Shell Offshore, Inc. v. Dep't of Interior, 997 F. Supp. 23 (D.D.C. 1998) . . . . . . 34

Thomas Jefferson Univ. v. Shalala, 512 U.S. 504 (1994) . . . . . . . . . . . . . . . 42, 46

United States v. Locke, 471 U.S. 84 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

United States v. Mitchell ("Mitchell II"), 463 U.S. 206 (1983) . . . . . . . . . . . . . 51

United States v. Utah Constr. & Mining Co., 384 U.S. 394 (1966) . . . . . . . . . . 37

Vitarelli v. Seaton, 359 U.S. 535 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**STATUTES**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

30 U.S.C. § 1701 note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

30 U.S.C. § 1701(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 51

30 U.S.C. § 1701(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

30 U.S.C. § 1719 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 48

30 U.S.C. § 1719(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

30 U.S.C. § 1724(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

5 U.S.C. § 706(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Administrative Procedures Act ("APA"), 5 U.S.C. § 702 . . . . . . . . . . . . . . . . 1, 12

*Federal Oil and Gas Royalty Management Act ("FOGRMA"),
   30 U.S.C. §§ 1701-59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 12, 16, 20, 22

Federal Oil and Gas Royalty Management Act of 1982,
   Pub. L. No. 97-451, 97 Stat. 2447 (codified at 30 U.S.C. §§1701-1759) . . 19, 20

Federal Oil and Gas Royalty Simplification and Fairness Act of 1996,
   Pub. L. No. 104-185, 110 Stat. 1700, as corrected by Pub. L. No. 104-200,
   110 Stat. 2421, 30 U.S.C. § 1724(h)(1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Indian Mineral Leasing Act of 1938 ("IMLA"), 25 U.S.C. § 396a-396g . . . . . . . . 5

**REGULATIONS**

25 C.F.R. Part 163 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

25 C.F.R. Part 211 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

30 C.F.R. § 221.66(a) (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

30  C.F.R. § 1290.105(a) (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*30 C.F.R Part 241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-5, 8, 10, 22, 23

*30 C.F.R § 243.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*30 C.F.R. Part 243 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*30 C.F.R. Part 290 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 6, 7, 9, 12, 16, 41

*30 C.F.R. § 290.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 36, 37, 46

30 C.F.R. § 241.56(a)(1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

30 C.F.R. § 1206.50(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

30 C.F.R. § 221.116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

30 C.F.R. § 221.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

30 C.F.R. § 221.54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

30 C.F.R. § 221.66 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

30 C.F.R. § 221.66(c)(1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

30 C.F.R. § 241.100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

30 C.F.R. § 241.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

30 C.F.R. § 241.20(d)(1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

30 C.F.R. § 241.51 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 24

30 C.F.R. § 241.53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*30 C.F.R. § 241.54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

*30 C.F.R. § 241.56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*30 C.F.R. § 241.56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 27

*30 C.F.R. § 290.105 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*30 C.F.R. § 290.3 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*30 C.F.R. § 290.3(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*30 C.F.R. § 290.3(a)(2)(1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*30 C.F.R. § 290.5 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

30 C.F.R. §1290.111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

43 C.F.R. § 4.1162 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

43 C.F.R. § 4.403 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

43 C.F.R. § 4.411 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

43 C.F.R. § 4.904(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

43 C.F.R. § 4.904(d) (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

47 Fed. Reg. 28368-70 (June 30, 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1 Fed. Reg. 1996-2003 (Nov. 20, 1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

38 Fed. Reg. 10000-01 (Apr. 23, 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

48 Fed. Reg. 35641 (Aug. 5, 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*49 Fed. Reg. 37335-53 (Sept. 21, 1984) . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 31

51 Fed. Reg. 16319-20 (May 2, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

54 Fed. Reg. 52796 (Dec. 22, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

*64 Fed. Reg. 26240-26252 (May 13, 1999) . . . . . . . . . . . 8, 21, 23, 25, 26, 31, 52

75 Fed. Reg. 61051 (Oct. 4, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

78 Fed. Reg. 43843 (July 22, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 49

x

## ADMINISTRATIVE DECISIONS

*Am. Petroleum, 160 IBLA 59 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 36, 44

ANR Production Co., 110 IBLA 127 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Apache Corp., 152 IBLA 30, 2000 IBLA LEXIS 10 . . . . . . . . . . . . . . . . . . 40, 41

BLM v. Fallini, 136 IBLA 345 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Dugan Prod. Co., MMS-98-01130-IND (Dec. 22, 2000) . . . . . . . . . . . . . . . . 7, 32

Friends of the River, 146 IBLA 157 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Heirs of George Martinez, Heirs of Arthur Chavez, 103 IBLA 375 (1988) . . . . . 40

Heirs of Herculano Montoya, 137 IBLA 142 (1996) . . . . . . . . . . . . . . . . . . . . 40

Helit v. Gold Fields Mining Corp., 113 IBLA 29 (1990) . . . . . . . . . . . . . . . . . 39

Jicarilla v. U.S. Dep't of the Interior, No. 07-00803 (RJL) (D.D.C.) . . . . . . . . . 11

Joseph J. C. Paine, 83 IBLA 145 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Kirby Exploration, 143 IBLA 133 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Lloyd D. Hayes, 108 IBLA 189 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Lynn Dahle, 58 IBLA 73 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 45

McPeek Mining v. Office of Surface Mining Reclamation & Enforcement,
    101 IBLA 389 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Merit Energy Co. v. Minerals Mgmt. Serv.,
    172 IBLA 137 (Aug. 3, 2007) . . . . . . . . . . i, 2, 4, 5, 8-10, 24, 28, 32, 44, 48, 49

Merit Energy Co., v. ONRR, No. IBLA 2004-267 (Nov. 16, 2010) . . . . . . . . . . . 4

Merrion Oil & Gas Corp., MMS-998-0228-IND (Dec. 22, 2000) . . . . . . . . . . 7, 32

Murphy Oil Corp., 147 IBLA 40 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Nabesna Native Corp., Inc., 83 IBLA 82 (1984) . . . . . . . . . . . . . . . . . . . . . . . . 35

Oryx Energy Co., 137 IBLA 177 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 42

P&K Coal v. Office of Surface Mining Reclamation, 98 IBLA 26 (1987) . . . . . 38

Phillips Petroleum, 147 IBLA 363 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Robert L. Bayless, MMS-98-0132-IND (Dec. 22, 2000) . . . . . . . . . . . . . . . . . 7, 32

Ron Williams Constr. Co., 124 IBLA 340 (1992) . . . . . . . . . . . . . . . . . . . . . . . 35

Santa Fe Energy Co., 110 IBLA 209 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Save Medicine Lake Coal., 156 IBLA 219 (2002) . . . . . . . . . . . . . . . . . . . . . . . 45

Thermal Energy Co., 135 IBLA 291 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . 38, 40

Turner Bros., Inc., v. Office of Surface Mining Reclamation &
     Enforcement, 102 IBLA 111 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

U.S. Forest Serv., 124 IBLA 336 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 45

Union Oil Co., 71 I.D. 169 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

United States v. Diana J. Foley, 142 IBLA 176 (1998) . . . . . . . . . . . . . . . . . . . 40

Vastar Resources Inc., MMS-98-0131-IND (Mar. 28, 2007) . . . . . . . . . . . . . 7, 32

Walter Van Norman, Jr., 114 IBLA 56 (1990) . . . . . . . . . . . . . . . . . . . . . . . 40, 45

Wilfred Plomis, 34 IBLA 222 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 97-859 (1982) *reprinted in* 1982 U.S.C.C.A.N. 4268 . . . . . . . . . . 30

House Committee on Oversight and Government Reform in its report,
    *Teapot Dome Revisited: Dereliction of Fiduciary Duty at the Interior*
    *Department*, "Interior owes a fiduciary duty to the American people."
    Staff Report, U.S. House of Representatives 111th Congress (2009) . . . . . . . 53

S. Rep. No. 97-512 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**OTHER AUTHORITIES**

4 K. Davis, Administrative Law Treatise (2d ed. 1983) . . . . . . . . . . . . . . . . . . . 37

Complaint,  No. 8-00316 (D.D.C. Feb. 25, 2008), ECF No.1 . . . . . . . . . . . . . . . 44

Complaint, Jicarilla Apache Nation v. U.S. Dep't of the Interior,
    No. 10-2052 (D.D.C. Dec. 1, 2010), ECF No. 1 . . . . . . . . . . . . . . . . . . . . . . . . 12

Decision of Ass't Sec'y Artman, March 28, 2007 . . . . . . . . . . . . . . . . . . . . . . . 32

Dep't of Interior's Cross Mot. Summ. J., Jicarilla v. Dep't of Interior,
    No. 10-2052 (D.D.C. July 15, 2011), ECF. No. 19 . . . . . . . . . . . . . . . . . . . . . . 34

Letter from Allen McDaniel, Supervisory Audit, Dallas Compliance
    Division, to Susan McCreary, Merit Energy Co. (Jan. 21, 1998) . . . . . . . . . . 6, 9

Order to Perform from Deborah Gibbs Tschudy, Chief, Royalty Valuation Div.,
    to Susan McCreary, Merit Energy Co. (Feb. 16, 1999) . . . . . . . . . . . . . . . . . 6, 24

Notice of Noncompliance – Failure to Perform and Pay,
    No. 99-039 (Aug. 19, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Order on Mot. to Limit Scope of Hr'g, Merit MMS-99-7,
    February 2, 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Order, IBLA No. 2004-267, Nov. 16, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Order, IBLA No. 2004-267, Oct. 22, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Supp. Resp. to MMS Mot. to Dismiss, Merit Energy Co. v. Mineral Mgmt.
  Serv. (IBIA 2000) (No. MMS 99-7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Transcript of Mot. Hearing "(Tr.)," *Jicarilla Apache Nation v.*
  *U.S. Dep't of Interior, et al.*, No. 10-2052 (JDB)
  (D.D.C. June 8, 2013), ECF. No. 27 . . . . . . . . . . 1, 11, 24, 29, 32-34, 36, 50, 52

U.S. Dep't of the Interior, D.F. Linowes, Comm'n Chairman,
  Report of the Comm'n on Fiscal Accountability of the Nation's
  Energy Res. (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 51

*Authorities upon which we chiefly rely are marked with asterisks.

# GLOSSARY

| | |
|---|---|
| ALJ | Administrative Law Judge |
| APA | Administrative Procedure Act |
| BIA | Bureau of Indian Affairs |
| BOEMRE | Bureau of Ocean Energy Mgmt., Regulation and Enforcement |
| Director | Director of MMS except as otherwise designated (i.e., USGS Director) |
| Enclosure 1 | Notice of Noncompliance General Information – Penalties with Period to Correct |
| FOGRMA | Federal Oil and Gas Royalty Mgmt. Act |
| Hearings Division | Office of Hearings and Appeals, Dep't of Interior |
| IBLA | Interior Board of Land Appeals |
| IMLA | Indian Mineral Leasing Act |
| Interior or DOI | Dep't of the Interior |
| Jicarilla | Jicarilla Apache Nation |
| Linowes Report | U.S. Dep't of the Interior, D.F. Linowes, Comm'n Chairman, Report of the Comm'n on Fiscal Accountability of the Nation's Energy Res. ("Linowes Report") (1982) |
| Merit | Merit Energy Co. |
| MMS | Minerals Mgmt. Serv. |
| MMS Order | Order to Perform |
| NON | Notice of Noncompliance |
| OHA | Hearings Division, Office of Hearings and Appeals |
| ONRR | Office of Natural Resource Revenue |

| | |
|---|---|
| OTP | Order to Perform |
| RSFA | Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 |
| Secretary | Secretary of the Interior |
| Tr. | Transcript of Mot. Hearing, *Jicarilla Apache Nation v. Dep't of Interior et al.*, No. 10-2052 (JDB) (D.D.C. June 8, 2012), ECF. No. 27 |
| USGS | United States Geological Survey |
| Vastar | *Jicarilla Apache Nation v. U.S. Dep't of the Interior, et al.*, No. 07-00803 (D.D.C. [date]) |

## JURISDICTIONAL STATEMENT

The district court reviewed the August 3, 2007 decision of the Interior Board of Land Appeals ("IBLA"), which applied federal law in a manner that adversely affected a federally-recognized Indian tribe, Appellant Jicarilla Apache Nation ("Jicarilla"). That IBLA decision was a final agency action. *See* 43 C.F.R. § 4.403 (2006) ("A decision of the Board [of Land Appeals] shall constitute final agency action and be effective upon the date of issuance, unless the decision itself provides otherwise."), *see also* Transcript of Mot. Hearing "(Tr.") at 5:14-15, *Jicarilla Apache Nation v. U.S. Dep't of Interior, et al.*, No. 10-2052 (JDB) (D.D.C. June 8, 2013), ECF. No. 27 ("the IBLA decision is the final agency action"). The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1362. The United States consented to suit pursuant to 5 U.S.C. § 702. On September 26, 2012, the district court issued its Memorandum Opinion denying Jicarilla's Motion for Summary Judgment and granting the Department of Interior's ("DOI") and Merit's Cross-motions for Summary Judgment. Jicarilla filed a timely Notice of Appeal on November 21, 2012. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The IBLA issued a decision finding that a party who was ordered by the Minerals Management Service ("MMS") to calculate and pay royalties pursuant to a

1

specific methodology, and who neither complied with the MMS order ("Order to Perform" or "OTP") nor appealed it under 30 C.F.R. Part 290, could nevertheless challenge that underlying methodology in a subsequent hearing on noncompliance and penalties under 30 C.F.R Part 241. *Merit Energy Co. v. Minerals Mgmt. Serv.*, 172 IBLA 137 (Aug. 3, 2007). The district court upheld the IBLA's decision in the case below, *Jicarilla Apache Nation v. U.S. Dep't. of the Interior*, Civ. No. 10-2052 (D.D.C. 2012), 892 F. Supp. 2d 285. Plaintiff Jicarilla now raises the following issues on appeal to this Court:

1.      Whether the district court erred in upholding the IBLA decision, when:

     a.      the MMS Part 290 regulations provided a clear avenue for appeal for the Order to Perform, and Merit Energy Company ("Merit"), the party at issue, did not appeal the Order to Perform according to those regulations;

     b.      the IBLA decision, by allowing an appeal of the Order to Perform under different regulations in a different forum and without regard to jurisdictional time limitations, rendered the first regulations meaningless; and

     c.      the IBLA decision, by allowing challenges to be made to royalty payment obligations in a noncompliance and penalty hearing,

undermined the MMS's enforcement procedures and capabilities, despite the mandate in the Federal Oil and Gas Royalty Management Act ("FOGRMA"), 30 U.S.C. §§ 1701-59, for improved enforcement of royalty obligations.

**STATUTES AND REGULATIONS – STATEMENT AS TO ADDENDUM**

A separately bound Addendum of pertinent Statutes and Regulations is provided with this brief.

**STATEMENT OF THE CASE**

On February 16, 1999, MMS issued an OTP directing Merit to recalculate and pay additional royalties for natural gas produced by Merit on the Jicarilla Apache Reservation based on MMS's major portion pricing methodology. Merit did not comply with the OTP, nor did not appeal it pursuant to 30 C.F.R. Part 290. On August 19, 1999, MMS issued to Merit a Notice of Noncompliance ("NON") charging Merit with failure to comply with the OTP. On September 22, 1999, Merit requested a hearing on the NON pursuant to 30 C.F.R. Part 241. The matter was assigned to an Administrative Law Judge ("ALJ") in the Hearings Division of the of the Office of Hearings and Appeals ("OHA"). During the noncompliance and penalty hearing, Merit attempted to challenge the validity of the OTP itself i.e., its underlying liability for additional royalties. The ALJ found that he did not have jurisdiction to consider

Merit's challenges to its underlying liability in a 30 C.F.R. Part 241 hearing. Merit appealed the ALJ's decision to the IBLA. The IBLA reversed the ALJ's decision in part concluding that the ALJ did have jurisdiction to hear Merit's belated challenges to the substance of the OTP in the context of a hearing on a NON. The IBLA remanded the matter instructing the Hearings Division to consider Merit's challenges to the substance of the OTP. *Merit*, 172 IBLA at 155-156. The subsequent proceedings at the Hearings Division culminated with the ALJ vacating the major portion methodology aspects of both the NON and the underlying OTP. Order, NON, *Merit Energy Co., v. ONRR*, No. IBLA 2004-267 (Nov. 16, 2010).

Concluding that all other issues had been resolved, the ALJ returned the case to the Office of Natural Resources Revenue ("ONRR")[1] on November 16, 2010. The parties agreed that this remand constituted final agency action and that the IBLA's decision in *Merit*, 172 IBLA 137 (2007), was ripe for review.

On December 1, 2010, Jicarilla brought suit in district court under the APA to set aside the August 3, 2007 IBLA decision vacating the MMS order directing Merit

---

[1] By Secretarial Order 3302 issued June 18, 2010, the Secretary of the Interior renamed the MMS the Bureau of Ocean Energy Management, Regulation and Enforcement ("BOEMRE"). A subsequent Secretarial Order 3306, issued September 30, 2010, transferred the Minerals Revenue Management Program and the Policy and Appeals Division from BOEMRE to the Office of Natural Resources Revenue ("ONRR"), which was established as a new bureau by Secretarial Order 3299, issued on May 19, 2010.

to calculate and pay additional royalties to Jicarilla. *Merit,* 172 IBLA 137 (2007). Merit intervened and all parties filed motions for summary judgment. The court upheld the IBLA's ruling as based on a reasonable interpretation of 30 C.F.R. Part 290 and of FOGRMA and its implementing regulations at 30 C.F.R. Part 241. Jicarilla appeals that decision.

## STATEMENT OF FACTS

In this case, the relevant facts are intertwined with the procedural history of the case, as is reflected below.

### A.    Merit's Oil & Gas Leases With Jicarilla.

From March 1993 through September 1995, Merit was the lessee and royalty payor for six leases with Jicarilla for oil and gas production on the Jicarilla Apache Reservation. These leases were entered into pursuant to the Indian Mineral Leasing Act of 1938 ("IMLA"), 25 U.S.C. § 396a-396g, on BIA Standard Lease Form 5-157 and were approved by Interior. As trustee, the United States, including its agencies, has a fiduciary duty to tribes which extends to the management of tribal resources, including the management of tribal oil and gas. Accordingly, FOGRMA states that the "Secretary should aggressively carry out his trust responsibility in the administration of Indian oil and gas." 30 U.S.C. § 1701(a)(4); *cited in BP America Prod. Co. v. Burton*, 549 U.S. 84, 99 (2006), *aff'g* 410 F.3d 722 (D. C. Cir. 2005).

5

In an audit, conducted pursuant to its fiduciary and statutory obligations to Jicarilla, MMS identified systemic problems with Merit's royalty calculations for the Jicarilla leases: (1) Merit failed to consider "major portion" value for gas produced and sold from the leases; (2) it failed to perform dual accounting; (3) it improperly claimed deductions from royalties; and (4) it failed to report gas sales as processed.

> **B.     The Order to Perform.**

MMS notified Merit of these systemic problems.  *See* Letter from Allen McDaniel, Supervisory Audit, Dallas Compliance Division, to Susan McCreary, Merit Energy Co. (Jan. 21, 1998) ("Issue Letter" or "Encl. 1").  Merit failed to respond to the Issue Letter and did not respond to multiple subsequent phone calls from MMS. On February 16, 1999, MMS issued an OTP to Merit with respect to the Jicarilla leases, directing it to recalculate royalties using "dual accounting" and "major portion" prices for the period July 1995 through September 1995. *See* Order to Perform from Deborah Gibbs Tschudy, Chief, Royalty Valuation Div., to Susan McCreary, Merit Energy Co. (Feb. 16, 1999).  In the OTP, MMS advised Merit of its right to appeal to the Commissioner of Indian Affairs pursuant to 30 C.F.R. Part 290 (1998), which governs appeals of OTPs.  Merit could appeal the February 16, 1999 OTP only by filing a notice of appeal within 30 days from service of the OTP.  30 C.F.R. §§ 290.3 and 290.5 (1998).  The regulations clearly stated that "[n]o extension

6

of time will be granted for filing the notice of appeal," *id.* § 290.3(a)(2)(1998). It is undisputed that Merit never filed an appeal of the OTP under 30 C.F.R. § 290, nor did it comply with it.

From 1998–1999, MMS issued virtually identical OTPs requiring recalculation of royalties due using major portion pricing to 38 other oil and gas companies. *See, e.g.*, *Robert L. Bayless*, MMS-98-0132-IND (Dec. 22, 2000); *Merrion Oil & Gas Corp.*, MMS-998-0228-IND (Dec. 22, 2000); *Dugan Production Co.*, MMS-98-01130-IND (Dec. 22, 2000); *Vastar Resources Inc.*, MMS-98-0131-IND (Mar. 28, 2007). Some of these lessees complied with the orders and paid additional royalties, some settled with MMS and Jicarilla, and many appealed the orders pursuant to 30 C.F.R. Part 290. Merit did none of these things.

### C.  The Notice of Noncompliance.

More than six months later, on August 19, 1999, MMS issued a NON to Merit charging Merit with failure to comply with the OTP. *See* NON – Failure to Perform and Pay, No. 99-039 (Aug. 19, 1999). The NON, which was issued pursuant to Section l09 of the Federal Oil and Gas Royalty Management Act ("FOGRMA") of 1982, 30 U.S.C. § 1719, and the [MMS] regulations in 30 C.F.R. § 241.51 (1999), explained that, because Merit had failed to comply with the requirements of the OTP, it was subject to civil penalties under 30 U.S.C. § 1719 and regulations at 30 C.F.R.

7

§ 241.51, 64 Fed. Reg. 26251-26252 (May 13, 1999). NON at 1-2. Merit was advised in the NON that "you can avoid civil penalties if you promptly comply with the MMS order." *Id.* at 1. In accordance with 30 C.F.R. § 241.53, the NON provided that to avoid civil penalties Merit could, within a 20-day cure period, make the required calculations and pay any additional royalties due, or pay the amount of additional royalties due as estimated by MMS at $1,339,899.79. *Id.* at 2-3.

The NON restated the violations enumerated in the OTP from which Merit could have appealed. *Id.* at 2. On September 15, 1999, Merit requested and MMS granted a 30-day extension of time to comply with the OTP. *Merit*, 172 IBLA at 140. MMS stated that having failed to appeal it, Merit had no further right to appeal the OTP, and that the Part 241 hearing would concern only the amount of the civil penalty. NON at 2.

Under 30 C.F.R. § 241.54, a party "may request a hearing on the record on a Notice of Noncompliance by filing a request within 30 days of the date [it] received the Notice of Noncompliance with the [Hearings Division]." The NON included an enclosure (Enclosure 1) informing Merit of this right. On September 22, 1999, Merit requested a hearing on the NON pursuant to 30 C.F.R. Part 241 (1999). *See Merit*, 172 IBLA at 140. Unlike an appeal of the OTP available under Part 290, a hearing on the NON under Part 241 cannot suspend compliance with the OTP. *Compare* OTP

8

at 9 (citing §243.2) *with* NON Enclosure 1 (request for hearing will not stay accrual of penalties). In its request for a hearing, Merit asked that it not only be allowed to contest its "underlying liability for civil penalties" (noncompliance with the OTP) but also the validity of the OTP itself, even though Merit had not availed itself of the appeal process in 30 C.F.R. Part 290. *See* Order on Mot. to Limit Scope of Hr'g at 2-3, *Merit* MMS-99-7, February 2, 2001. In a Motion in Limine based on the doctrine of administrative finality, MMS opposed the notion that Merit could challenge the validity of the OTP during a hearing only on noncompliance with the OTP. *Id.*

### D. Initial Proceedings at the Office of Hearings and Appeals.

The hearing on the NON was assigned to an ALJ in the Hearings Division of the Office of Hearings and Appeals ("OHA"). During the proceedings at the Hearings Division, MMS argued that under 30 C.F.R. Part 290, the only avenue for appealing an OTP with respect to an Indian oil and gas lease was to appeal to the Commissioner of Indian Affairs and then to the IBLA. *See Merit*, 172 IBLA at 141. The ALJ agreed and, by order dated November 16, 2001, ruled that the Hearings Division lacked jurisdiction to consider the validity of the OTP, including the data and methodology used to derive the major portion prices applied therein. *Id.*

An evidentiary hearing was held before the ALJ in July 2003 that was limited to the issue of whether the OTP had been properly served on Merit. In a decision

9

issued on May 27, 2004, the ALJ held that the OTP was properly served and, therefore, he upheld the NON.  *Id.* at 142.

### E.    Proceedings Before the Interior Board of Land Appeals.

Merit appealed the ALJ's decision to the IBLA.  It disputed the ALJ's conclusion that the OTP was properly served on it, and renewed its argument that, in the course of contesting the NON pursuant to 30 C.F.R. Part 241, it had the right to challenge the validity of the additional royalties due under the OTP.  Jicarilla intervened in this proceeding and filed an Answer in support of MMS' Answer. *Merit*, 172 IBLA 143.  In a decision issued on August 3, 2007, the IBLA affirmed the ALJ's finding that Merit was properly served with the OTP.  *Id.* at 155.  However, the IBLA reversed the ALJ's decision on the jurisdictional issue of whether the ALJ had authority to consider Merit's challenge to the validity of the OTP itself.  *Id.* at 156. The IBLA ruled that, notwithstanding Merit's failure to appeal the OTP pursuant to Part 290, Merit had an independent right to a hearing on the NON pursuant to Part 241 at which it was entitled to dispute its underlying liability, including any defenses to the OTP.  *Id.*  The IBLA set aside the ALJ's decision upholding the NON and remanded the case to the Hearings Division for a full hearing on the NON.  *Id.*

10

**F.      Jicarilla's Initial Challenge to the IBLA decision in the United States District Court for the District of Columbia.**

Jicarilla then filed suit in district court seeking to overturn the IBLA decision. *Jicarilla Apache Nation v. U.S. Dep't of Interior*, No. 08-0316 (JDB).  The district court dismissed Jicarilla's suit on Merit's motion, because the IBLA decision "is not ripe for review because there has been no final agency action." *Jicarilla v. U.S. Dep't of Interior*, 648 F. Supp. 2d 140, 146 (D.D.C. 2009).  The district court noted that "when the Department's administrative adjudication is complete, Jicarilla will have the opportunity to seek judicial review of the IBLA decision at issue here." *Id.* at 147 n.4.

**G.      Proceedings On Remand at the Office of Hearings and Appeals.**

After remand from the IBLA to the OHA, the matter was stayed by the ALJ pending issuance of a final decision in another case regarding major portion prices, *Jicarilla v. U.S. Dep't of the Interior, et al.*, No. 07-00803 (RJL) (D.D.C.) ("Vastar").  Order, IBLA No. 2004-267, Oct. 22, 2007.  After that case was resolved, the OHA, by an order dated November 16, 2010, vacated the major portion methodology portions of the OTP and NON and remanded the entire case to ONRR.  Order, IBLA No. 2004-267, Nov. 16, 2010. The parties agree this constituted final agency action. *See* Tr. 5:14-15.

11

### H.     Jicarilla's Subsequent Challenge to the IBLA decision in the United States District Court for the District of Columbia.

On December 1, 2010 Jicarilla brought suit in district court under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, to set aside as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" the August 3, 2007 IBLA decision vacating the MMS order directing Merit to calculate and pay additional royalties to Jicarilla.  Compl. ¶ 1, No. 10-2052 (D.D.C. Dec. 1, 2010), ECF No. 1.  Specifically, Jicarilla challenged the ruling as having improperly construed Interior's regulations to permit Merit to make a belated challenge to the royalty order.  *Id.* ¶¶ 30-35. The Complaint also alleged breach of Interior's trust obligations to Jicarilla.  *Id.* ¶¶ 37-39.  Merit intervened and all parties filed motions for summary judgment.  The district court upheld the IBLA's ruling, finding it was based on a reasonable interpretation of 30 C.F.R. Part 290 and of FOGRMA and its implementing regulations at 30 C.F.R. Part 241.  *Jicarilla,* (No. 10-2052), 892 F. Supp. 2d at 295-296.

### SUMMARY OF APPELLANT'S ARGUMENT

Merit failed to avail itself of the opportunity, within the strictly enforced time limit, to appeal the validity of MMS' OTP requiring a recalculation of its royalty obligations and payment of any additional royalty due to Jicarilla.  *See Jicarilla,* (No. 10-2052), 892 F. Supp. 2d at 287.  That strict time limit, emphatically stated in 30

12

C.F.R. Part 290, is jurisdictional. *See Am. Petroleum*, 160 IBLA 59, 71 (2003) ("The timely filing of a notice of appeal [under Part 290] is a jurisdictional requirement"). The IBLA has consistently and strictly enforced that time limit over many years. *See, e.g.* 54 Fed. Reg. 52796 (Dec. 22, 1989) and discussion *infra* at Section C, Deference. When that time expired, Merit lost its only opportunity to appeal the additional royalties due.

Provisions for a hearing on penalties under Part 241 for failure to comply with the OTP do not offer a new opportunity to appeal the validity of the underlying order to recalculate and pay additional royalties.  Merit's arguments and the IBLA's ruling that transformed a Part 241 penalty hearing into a redundant second chance at a Part 290 appeal of the order to pay additional royalties rely on a strained and impermissible interpretation of the law.  The phrase "underlying liability" in § 241.56(a)(1999) ("If you did not request a hearing on the record on the [NON] under §241.54, you may not contest your underlying liability for civil penalties") is admittedly seductive, but that phrase and the IBLA's interpretation of it is inconsistent with integrally related statutes, rules, and longstanding practice.  The clear time limit for appeal under Part 290 stands in stark contrast to the intuitive leap required to permit Merit to challenge the validity of an OTP long after similarly situated violators had timely appealed and had their appeals granted or denied or had settled and paid additional royalties due.

13

The IBLA lacked the necessary jurisdiction to support its ruling. *ANR Production Co.*, 110 IBLA 127, 128 (1989) (IBLA lacks jurisdiction over Part 290 appeal). Its ruling was arbitrary, capricious, and not in accordance with the law. Moreover, this disparate treatment of one lessee at the expense of a tribal lessor sets a precedent that amounts to a breach of Interior's duty as trustee of valuable resources on both tribal and public lands.

## ARGUMENT

The district court clearly erred in deferring to and upholding the IBLA's ruling that Merit Energy Company could avail itself of a separate avenue of appeal under Part 241 after not appealing an Order to Perform under Part 290. The IBLA correctly concluded that the Part 290 and Part 241 processes for challenging MMS decisions were "separate processes," but it incorrectly decided that a Part 241 hearing on a notice of noncompliance can be used to challenge the obligation to pay additional royalties under an earlier issued (and unappealed) Order to Perform. Especially in light of the consistent application by Interior of the administrative finality doctrine to Part 290 appeals, it was a radical, and erroneous, departure for the IBLA to conclude that Interior intended to make Part 290 appeals of orders optional through the creation of a separate process under 241, which is properly limited to penalties. That decision was arbitrary and capricious in light of the entirety of the statutory and regulatory

14

framework.  It was also inconsistent with the position taken by Interior prior to and after the IBLA's decision.

Additional royalties due under a lease are not a penalty, and by conflating the two, the IBLA clearly erred and reached a conclusion that is arbitrary, capricious, and contrary to law.  By deferring to the IBLA, the district court perpetuated the erroneous reading of the regulatory regime, and its decision must be reversed.  To understand fully why this is so, it is first necessary to examine each of the relevant statutes and regulations, their history, and the interplay among them.

## I.     STANDARD OF REVIEW.

"As with all summary judgment dispositions, we review the district court's denial of appellants' motion for summary judgment and grant of appellees' cross motion for the same *de novo*." *Defenders of Wildlife v. Gutierrez*, 532 F.3d 913, 918 (D.C. Cir. 2008) (citation omitted).  Because this case arises under the APA, the court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §  706(2). "Although the 'scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency,' we must nonetheless be sure [CFTC] has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action

15

including a rational connection between the facts found and the choice made.'"
*Chamber of Commerce v. SEC*, 412 F.3d 133, 140 (D.C. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## II.   THE STATUTORY AND REGULATORY FRAMEWORK CREATES DISTINCT METHODS FOR CHALLENGING ORDERS TO PERFORM AND PENALTIES ASSESSED FOR VIOLATION OF SUCH ORDERS.

Companies leasing land on Indian reservations for production of natural gas have been provided with the opportunity to appeal adverse orders since the early days of the industry.  This longstanding policy, well established, with a  separate and distinct system for filing administrative appeals of orders, was in place long before FOGRMA created penalty provisions and related hearings.  That administrative appeal system continued after FOGRMA, unaffected by the new penalty regulations, except for references intended to establish and preserve the distinction.

### A.   30 C.F.R. Part 290, Appeals from Orders and Decisions.

Regulations governing the development and production of gas on restricted Indian lands were published in the Federal Register on November 20, 1936.  *See* 1 Fed. Reg. 1996-2003 (Nov. 20, 1936).  At that time the Director of the United States Geological Survey ("USGS") supervised and directed operations under oil and gas leases and the superintendent of an Indian agency was responsible for oil or gas leases

for restricted Indian lands. *Id.* at 1997. Section 6 of these early regulations, dealing with Appeals, provided that the lessee, "after complying with any order intended to carry out the terms and spirit of these regulations" could appeal to the Secretary by filing the appeal with "the official from whose order appeal is made within 30 days after the order had been served." *Id.* at 2003.

A similar provision for appeals of orders has been part of oil and gas regulations in Title 30 of the C.F.R. ever since. The time limit for filing appeals of orders has in the past been shorter than the current 30 days. *See*, *e.g.*, 30 C.F.R. § 221.66 (1970), which allowed an appeal to the USGS Director from any order of the supervisor[2] to be filed within 20 days after service of the order. § 221.66(a). The scope and purpose of the appeal was then as it still is and was for Merit in 1999. The appeal was to show justification for reversal or modification of the order. *Id.* Appeal from any decision of the Director [USGS] could then be taken within the Department, as is still the case today. *Compare* § 221.66(c) (1970)(appeal to Secretary) *with* 30 C.F.R. § 1290.105(a) (2012) (appeal to IBLA).[3] The supervisor was to enforce the regulations and his orders issued pursuant to those regulations. § 221.16. Enforcement methods

---

[2] A representative of the Secretary, under administrative direction of the USGS Director, authorized and empowered to supervise and direct oil and gas operations.

[3] On October 4, 2010, 30 C.F.R. Part 290 became Part 1290 and 30 C.F.R. Part 241 became Part 1241. *See* 75 Fed. Reg. 61051 (Oct. 4, 2010).

included shutting down any operation, cancelling leases, and assessing damages for violations of his orders. *Id.* (citing §§ 221.53 and 54).

In 1973 the oil and gas production rules were revised to include a new 30 C.F.R. Part 290.  38 Fed. Reg. 10000-01 (Apr. 23, 1973).  The new Part 290 consolidated in one part substantially the same appellate procedure as formerly provided in separate parts of title 30, including § 221.66, discussed above, which had governed appeals until then.  The new Part 290 enlarged the time for taking an appeal from an order or decision of an Oil and Gas Supervisor from 20 days to 30 days from receipt of the order or decision.  § 290.3(a).   The 30-day time limit for filing appeals, first under 30 C.F.R. § 221.66 and later under Part 290, has always been strictly enforced.[4]

---

[4]    Because of the jurisdictional nature of the time limit and its strict enforcement, MMS revised the rules to include a so-called "grace" period.  In the preamble to this rule change, MMS discussed Part 290 appeals and explained their purpose:

> The MMS has been strict in its evaluation of timeliness, a policy that has been consistently upheld by the Interior Board of Land Appeals (IBLA). If more than 30 days has elapsed between the date on the [U.S. Postal Service's] return receipt card and the date of the receipt by MMS stamped on the notice of appeal, then the appeal was dismissed as untimely . . . . The majority of all appeals concern the collection of royalties due to the Government.  The appeals process is a forum for the correction of error and clarification of policy in royalty collection.

54 Fed. Reg. 52796 (Dec. 22, 1989) (emphasis added). The 10-day grace period for

### B.     Congress addresses the need for penalities in FOGRMA.

Thus, there was a long-established mechanism for issuing orders to comply with, for example, lease terms, and Part 290 provided an appeal process from such orders.  But there was no adequately structured method for assessing penalties. Congress addressed that shortcoming in the Federal Oil and Gas Royalty Management Act of 1982 ("FOGRMA"), Pub. L. No. 97-451, 97 Stat. 2447 (codified at 30 U.S.C. §§1701-1759), which was enacted in response to the January 1982 Report of the Commission on Fiscal Accountability of the Nation's Energy Resources also known as the Linowes Commission.  The Commission made 60 specific recommendations to improve DOI's royalty management effort.  Those recommendations included improved accounting and stricter penalty provisions for noncompliance.

The Commission noted in the summary to its report that "[t]he results of individual audits, which have often uncovered large underpayments, suggest that hundreds of millions of dollars due the U. S. Treasury, the States, and Indian tribes are going uncollected every year."  U.S. Dep't of the Interior, D.F. Linowes, Comm'n Chairman, Report of the Comm'n on Fiscal Accountability of the Nation's Energy Res. ("Linowes Report") (1982) at xv.  One of the explicit purposes of FOGRMA was

_____

the notice to be "received in the proper office" only applied if the appellant could show that the notice of appeal was actually timely transmitted.

19

"to require the development of enforcement practices that ensure the <u>prompt and proper collection</u> and disbursement of oil and gas revenues owed to the United States and Indian lessors and those inuring to the benefit of States." 30 U.S.C. § 1701(b)(3) (emphasis added).

"[A]fter due notice of violation," FOGRMA §109(a), imposes multiple levels of penalties for failure to comply "with any requirement of this Act or any mineral leasing law, any rule or regulation thereunder, or the terms of any lease or permit issued thereunder[.]" Section 109(e), however, provides that "[n]o penalty under this section shall be assessed until the person charged with a violation has been given the opportunity for a hearing on the record." As to the nature of a NON hearing, §109(i), provides: ''In determining the amount of such penalty, or whether it should be remitted or reduced, and in what amount, the Secretary shall state on the record the reasons for his determinations[]." Congress limited the scope to penalties and made no mention of substituting this hearing for an appeal that should have been taken under Part 290.

C.    **30 C.F.R. Part 241: The Implementation of FOGRMA Penalties.**

In 1984, final rules were published to implement FOGRMA.  49 Fed. Reg. 37335-53 (Sept. 21, 1984).[5]  The new rules included penalty provisions under Part 241 pursuant to FOGRMA §  109 and a new Part 243 Subpart A dealing with appeals.  *Id.* at 37353.  The new §  243.1 provided: "Except as may otherwise be provided in Part 241 hereof, an order or decision issued under regulations administered by the Royalty Management Program may be appealed in accordance with the provisions of Part 290 of this Chapter."  *Id.*  It is here that the somewhat complex interplay among §§  241, 243, and 290 provided the fertile ground from which Merit managed to extract an exception for itself to the strict time limits for appeal.

Part 241 provides for hearings on civil and criminal penalties but distinguishes these hearings from appeals under Part 290.   30 C.F.R. §  241.20(d)(1998)[6] provides: "No penalty under this section shall be assessed until the person charged with a violation [i.e. failure to comply with the OTP] has been given the opportunity for a

---

[5]  In 1982, the MMS stepped into the shoes of the USGS.  47 Fed. Reg. 28368-70 (June 30, 1982).  In conjunction with those changes 30 C.F.R. §  221.116, dealing with liquidated damages, was redesignated §  241.100.  48 Fed. Reg. 35641 (Aug. 5, 1983).  Liquidated damages is the precursor of the penalty provisions later enacted with FOGRMA.

[6] Section 241.20 was removed from the rules in the course of implementing RSFA.  *See* 64 Fed. Reg. 26251 (May 13, 1999).

hearing.  Hearings shall be held by the appropriate MMS official whose findings shall

be conclusive unless an appeal is taken pursuant to 30 C.F.R. Part 243."[7]  Of course,

as noted above, an appeal taken pursuant to 30 C.F.R. Part 243 means taking "an

appeal in accordance with the provisions of Part 290," § 243.1, which Merit did not

do, thereby waiving its opportunity to appeal.

> **1.     30 C.F.R. Part 243 Highlights the Distinction Between
> Part 290 Appeals from Orders and Part 241 Hearings
> on Penalties.**

Section 243.1, dealing with Procedures, provides:

> Except as may otherwise be provided in Part 241 hereof, an order or
> decision  issued  under  regulations  administered  by  the  Royalty

---

[7]  30 C.F.R. §  241.56, Hearings on Notices of Civil Penalty, was promulgated
pursuant to FOGRMA's penalty provisions, not as a second bite at the apple for those
who slept on their right to appeal.  A hearing to challenge only the amount of a civil
penalty under this provision is different from a hearing on a NON.  It is actually not
relevant to the issues in this case except that it is in this provision that we find the
language    that seems to have led the IBLA astray.       Section 241.56(a) provides
(emphasis added):

> (a) You may request a hearing on the record to challenge only the
> amount of a civil penalty when  you receive a Notice of Civil Penalty, if
> you did not previously request a hearing on the record under §  241.54.
> If  you  did  not  request  a  hearing  on  the  record  on  the  Notice  of
> Noncompliance under §241.54, you may not contest your underlying
> liability for civil penalties.

It is important to note that a right to "contest your underlying liability for civil
penalties" is not the same as the right to appeal the validity of the OTP itself, as
discussed more fully below.  Merit had already lost that right.

Management Program may be appealed in accordance with the provisions of Part 290 of this Chapter.

49 Fed. Reg. 37336, 37353 (Sept. 21, 1984) (implementing FOGRMA).

MMS explained that:

This section provides that most decisions and orders of the Royalty Management Program may be appealed in accord with the appeal procedures in 30 C.F.R. Part 290. The exception is appeals from FOGRMA penalty assessment orders which must be appealed with the specific appeal procedures of Part 241.

*Id.* at 37343-44.

Thus, an appeal by Merit challenging the validity of its OTP (which was not a "FOGRMA penalty assessment order[]") would have to been taken pursuant to Part 290, not Part 241. This direction from MMS underscores the separate and distinct character of penalties imposed pursuant to FOGRMA, which result from an "entirely different process," *see* 64 Fed. Reg. at 26247-48 *infra*, from that prescribed for appeals under Part 290, a process that existed long before FOGRMA and then continued unaffected thereafter.

### 2. Part 290 and Part 241 proceedings have different time limits and are heard in different fora, reflecting the intent that they serve different purposes.

Notably, in sharp contrast to the restriction on Part 290 appeals, no time limit is imposed for requesting a Part 241 hearing. The rule simply calls for the opportunity for a hearing. It would make no sense for a hearing or appeal, ostensibly both allowing Merit to challenge the validity of the OTP, to have such totally different time

23

constraints.  As the IBLA noted "the process for contesting a NON and potential civil penalty is a <u>different process</u> than that for challenging [MMS Royalty Management Program] orders under Part 290[.]"  *Merit*, 172 IBLA at 147 (emphasis added).  As Merit itself told the district court during the June 8, 2012 motions hearing, Merit, in the OTP, "wasn't ordered to pay a royalty determination; it was ordered to do something."  Tr. 42.  The OTP read: "Merit is ordered to <u>perform</u> the following major portion and dual accounting calculations."  OTP at 5 (emphasis added).  In complying, Merit may or may not have determined that it owed additional royalties to Jicarilla.  Its recalculation may have shown that it owed nothing.    The NON, on the other hand, is about failure to comply with the OTP.  According to the OTP, "your failure to comply with the terms of this Order may be considered a violation pursuant to 30 [C.F.R.] § 241.51 and could subject you to appropriate penalties as provided therein."  OTP at 9.  The hearing on the NON is, accordingly, about whether Merit complied (i.e., did it perform the required major portion and dual accounting calculations), not whether it took issue with the royalty recalculation directives in the OTP.

The Hearings Division has no subject matter jurisdiction over an appeal of an OTP even if couched as a FOGRMA penalty hearing.  Merit's appeal could only have gone to the Deputy Commissioner of Indian Affairs.  30 C.F.R. §  290.105 (1999).

**D.     Federal Oil and Gas Royalty Simplification and Fairness Act of 1996.**

The Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 ("RSFA"), Pub. L. No. 104-185, 110 Stat. 1700, as corrected by Pub. L. No. 104-200, 110 Stat. 2421, 30 U.S.C. § 1724(h)(1996), amended portions of FOGRMA to require that all levels of administrative appeals of MMS orders or decisions involving royalties due on Federal oil and gas leases be completed within 33 months.  30 U.S.C. § 1724(h).  Although RSFA does not apply to Indian tribes, Pub. L. 104-185, § 9, 30 U.S.C. § 1701 note, Jicarilla discusses RSFA here because the regulations implementing RSFA help to illustrate the important distinctions between Part 290 appeals and Part 241 hearings.  In 43 C.F.R. § 4.904(d) (1999), Interior applied this 33-month time limit only to appeals under Part 290; the time limit was not applied to NON hearings pursuant to Part 241.  *See* 64 Fed. Reg. 26240, 26247-48 (May 13, 1999); 43 C.F.R. § 4.904(d)).  MMS explained these provisions in the revised rules as follows:

> We also have revised the proposed definition of order to clarify that order does not include a [NON] . . . issued under the provisions of FOGRMA section 109, 30 U.S.C. 1719, and implementing regulations at 30 C.F.R. part 241.  . . . This follows from the first sentence of 30 U.S.C. 1724(h)(1), which establishes that the RSFA time of decision and rule of decision requirements cover ''demands or orders issued by the Secretary . . .'' that are ''subject to administrative appeal in accordance with the regulations of the Secretary.''    FOGRMA civil penalty

25

assessments result from an <u>entirely different process</u> that is prescribed separately by statute.

Civil penalty assessments do not result from administratively appealable MMS . . . orders.  Instead, FOGRMA section 109(e) prescribes that no civil penalty may be assessed until a person has been given an opportunity for a ''hearing on the record''—*i.e.*, a formal trial-type hearing before an [ALJ], which must be conducted under [APA] provisions at 5 U.S.C. 554, 556, and 557.

. . . <u>the purpose of section 1724(h) was to address perceived problems with MMS's administrative appeal process that are unrelated to civil penalty proceedings</u>.

64 Fed. Reg. at 26247-48 (emphasis added).

Although RSFA does not apply to Indian tribes, the IBLA's ruling would, with respect to federal lands, incongruously result in a 33-month deadline for ruling on a Part 290 appeal but no deadline for ruling on the same important issue if allowed to proceed in the context of a Part 241 hearing.

## III.   THE IBLA RULING MISREADS THE LAW AND IGNORES THE IMPORTANCE OF ADMINISTRATIVE FINALITY, CREATING AN INCOHERENT RESULT NOT ENTITLED TO DEFERENCE.

The preceding review of the relevant statutory and regulatory framework demonstrates that Part 290 appeals from orders and decisions serve a very different purpose than Part 241 challenges to notices of noncompliance.  The IBLA's decision to the contrary should be vacated, and the district court's deference to that decision must be reversed.

26

**A.      The IBLA Misinterpreted the Statutes and Regulations in Concluding that Orders May Be Challenged Under Part 241, Rather than Exclusively Under Part 290.**

The IBLA misunderstood the significance of the language in 241.56(a).  In short, that provision discusses a party's ability to challenge the "underlying liability for civil penalties" if it asks for a hearing on a notice of noncompliance.  Where the IBLA clearly erred, however, is that where an order to perform has issued, it is compliance (or noncompliance) with that order that provides the "underlying liability *for civil penalties*."  In contrast, the order to perform addresses the underlying liability *for additional amounts due under*, for example, *a lease*.  A Part 290 appeal is the only avenue for challenging the latter.  The former may be challenged only under Part 241.

30 C.F.R. § 241.56(a) provides:

> (a) You may request a hearing on the record to challenge only the amount of a civil penalty when you receive a Notice of Civil Penalty, if you did not previously request a hearing on the record under § 3241.54. <u>If you did not request a hearing on the record on the Notice of Noncompliance under § 241.54, you may not contest your underlying liability for civil penalties</u>.

(emphasis added).  The IBLA incorrectly concluded that, because Merit did "request a hearing on the record on the [NON] under § 241.54," it may contest not only its underlying liability for civil penalties arising from its failure to comply with (or

27

appeal) the order but also may challenge the additional royalties due under the OTP even though Merit had long ago failed to appeal the OTP.

The IBLA explained:

> Given that the regulation at 30 C.F.R. § 241.56(a) provides that a party can contest its "underlying liability" in the subsequent hearing on the record of a Notice of Civil Penalty only if it has previously requested a hearing on the NON, it follows that if a party is to have any opportunity to contest its "underlying liability," it must do so in a timely requested hearing on the record of a NON.

*Merit*, 172 IBLA at 150.

The IBLA assumed, without any analysis, that "underlying liability" means the underlying liability to make additional royalty payments under the OTP. As the above discussion of the regulatory framework demonstrates, however, that conclusion is simply wrong. Part 290 provides the avenue for challenging orders, in this case the OTP's mandate to apply a certain method for recalculating royalties under the leases. Part 241, created to implement the penalty provision of FOGRMA, is limited to consideration of whether a party complied with the order, not with the lease.[8] The only way to harmonize the regulatory framework when an order to perform has issued (and not been appealed successfully) is to read the clause "underlying liability for civil

_____

[8] In some instances, notices of noncompliance are issued without a preceding order, for example, for violation of a regulation. In such situations, the "underlying liability for civil penalties" presumably would include the merits of that violation.

penalties" as being limited to compliance with the order.

This issue was highlighted during the June 8, 2012 Motions hearing before the district court. Craig Carver, for Merit, interpreted the OTP as saying "you're not yet subject to penalties" and "[y]ou don't have a right to appeal under 241 yet." Tr. 45. Mr. Carver thus highlighted the distinct roles of an OTP and a NON as well as the separate and distinct procedures for responding to both. The hearing on a NON is not a second opportunity to appeal the validity of an OTP for those who sleep on their rights.

The court quickly recognized the peculiar nature of Mr. Carver's characterization of the OTP:

> [T]here is something odd about having a specific appeal process under 290 to challenge OTPs but yet leaving open the possibility that years later, after you failed to follow that specific appeal process designed to enable a challenge to an OTP in some penalty phase for not doing what you're supposed to do, you can go all the way back to challenge that underlying OTP. That's a little bit odd . . . because it enables it to be challenged in subsequent contexts down the road, many years, perhaps, down the road.

*Id.* at 45-46.

Exactly so, odd indeed. The Part 241 hearing provision was included specifically in the context of FOGRMA penalties. There is no evidence that Congress intended to provide an alternate route to appeal for those who dragged their feet and missed the chance to appeal under Part 290. Rather, penalties were the focus of

FOGRMA because Interior could already pursue additional royalties due under existing law. The need for penalties was acknowledged in the legislative history of FOGRMA.  For example, the House Report explained that:

> meaningful penalties are rarely imposed, and even interest charges for late payment are only a recent development. . . . At present the Government's legal authority to impose sanctions for late payment or nonpayment is limited. . . . Furthermore, there is no provision for civil penalties for failing to comply with present MMS rules for onshore leases, with the exception of "liquidated damages."  The limits under existing regulations on such damages are very low.

H.R. Rep. No. 97-859, at 18 (1982) *reprinted in* 1982 U.S.C.C.A.N. 4268, 4272.

The need for more robust penalties was tempered with concern that violators be treated fairly.  The section-by-section analysis in the House Report required the Secretary "to hold a hearing before collection of any penalties and allows the Secretary to reduce penalties depending on circumstances surrounding violations." *Id.* at 24, 1982 U.S.C.C.A.N. at 4278.  The Senate Report expressed concern about the "specific discretionary authority to the Secretary to modify any such penalty on a case-by-case basis after taking into account circumstances enumerated in the bill." S. Rep. No. 97-512, at 17 (1982).  The Committee attempted to achieve balance "by providing a requirement of notice of violation and a lower civil penalty limit for certain violations of the Act and a steeply rising civil penalty liability for serious violations knowingly or willfully committed." *Id.*

30

The hearing provision in Part 241 was added in that context – penalties – not out of any perceived need to give violators a second chance to appeal the validity of the underlying OTP regarding additional royalties.   Given the findings and recommendations of the Linowes Commission Report, a report that was the inspiration for FOGRMA, it would indeed be at least "a little bit odd" to include in the statute or its implementing regulations a brand new mechanism for violators to avoid paying royalties.

Instead, as explained above, the hearing provision was added as a precaution in the context of imposing a new penalty regimen.   A hearing on a NON would address questions such as:  Did you get the NON?  Have you come into compliance?  And potentially, have you acted willfully?  – because willful noncompliance can increase the penalty. *See* 49 Fed. Reg. 37336, 37343 (Sept. 21, 1984) (implementing FOGRMA, describing NON hearings) and 64 Fed. Reg. 26240, 26251 (May 13, 1999) (implementing RSFA, non-binding guidelines for determining penalties, contrasting OTP appeals).

Accordingly, Merit's right to challenge the validity of the underlying OTP had already expired with Merit's failure to avail itself of the longstanding and well-established appeal procedure at Part 290.  Significantly, other companies, similarly situated and who received virtually the same OTP,  understood Part 290 to be their

31

proper and only path for challenging the validity of their very similar OTPs.  *See*, *Jicarilla v. Dep't of Interior* ("*Vastar*"), 613 F.3d 1112, 1115 (D.C. Cir. 2010) (discussing 39 OTPs including *Dugan*, *Merrion*, *Bayless*, *Vastar*).  *See also* Decision of Ass't Sec'y Artman, March 28, 2007 (listing 7 companies that appealed OTPs under 30 C.F.R. Part 290.  Merit nevertheless elected to squander the limited resources of Jicarilla, the government, and its own resources on a brand new reading of the law that, tellingly and by Merit's own admission, has not been taken up by anyone else before or since.

During the June 8, 2012 motions hearing before the district court, the court observed that, based on statistics Merit itself placed in the record "almost all appeals go forward under 290."  Tr. 10.  Merit's counsel assured the court that the IBLA's 2007 decision did not cause the "floodgates" to open.  *Id.* at 32.  Instead, apparently inadvertently attesting to the peculiarity of his arguments, he said that Merit's was the only case he could find arising under Part 241.[9]  The court noted that "[i]t also means that perhaps the 241 really isn't designed to handle a challenge to an OTP."  *Id.* Unfortunately, the court's opinion does not reflect that astute observation.  Nor did the

---

[9]  Mr. Carver then went on to admit that Merit would have appealed under Part 290 but did not because "our management never got the initial 290 OTP."  Tr. at 33. Merit's assertion in an earlier proceeding that it was not properly served with the OTP was soundly rejected by the ALJ and his decision was affirmed by the IBLA, which discussed the affirmance at length.  *Merit*, 172 IBLA at 151-56.

court heed Ruth Ann Storey, representing DOI, who acknowledged that "the Federal Register notice appears to argue that [a Part 241 hearing] is limited to the amount of the civil penalty." *Id.*

There is simply no way to reconcile the structure and strict time limits under Part 290 with the IBLA's overly liberal reading of Part 241.

### B.    The IBLA Also Undermined the Importance of Administrative Finality in the Department's Proceedings.

Administrative finality is a hallmark of agency proceedings and helps to insure the orderly, and sequential, administration of statutory and regulatory schemes.  In this situation, having finality on the royalty issues raised in the OTP (after any appeal under Part 290) allows Interior to then move on to the next set of issues: whether penalties are warranted based on the level of compliance with that order.

### 1.    Treatment of Administrative Finality Below.

The IBLA did not address the importance of administrative finality in its ruling, a point which the district court engaged in some contortion to explain.  It's conclusion that the agency's path "may reasonably be discerned" is not accurate and does not do justice to the importance of administrative finality.  *See* 892 F. Supp.2d at 295.  In contrast, during the June 8, 2012 Motions hearing before the district court, Ms. Storey for the government agreed with the court that the IBLA had failed to address the issue of administrative finality.  She said the court should remand on that issue to the IBLA.

33

Tr. 30; *see also* DOI's Cross Mot. Summ. J. at 10 n. 6, *Jicarilla*, No. 10-2052 (D.D.C. July 15, 2011), ECF No. 19.  She qualified that statement by noting that the doctrine of administrative finality applies "when a party has an opportunity to seek review and doesn't do so."  *Id.*  The court observed that "the party had an opportunity to seek review of the underlying OTP issue under 290 and didn't seek it."  *Id.*  Ms. Storey confirmed that "we all agree with that."  *Id.*  But administrative finality was raised below and provides ample reason for reversal here.

> **2.    The timely filing requirement of 30 C.F.R. § 290.3 is jurisdictional and the Office of Hearings and Appeals ("OHA") has no authority to waive a jurisdictional requirement.**

Merit may not raise issues regarding the underlying Order to Perform major portion pricing in a hearing on a NON, where the MMS rules (30 C.F.R. § 290.3) specifically state that appeals must be filed within 30 days and no extensions may be granted.  *See Shell Offshore, Inc. v. Dep't of Interior*, 997 F. Supp. 23, 27 (D.D.C. 1998) (An MMS decision or order "*must be appealed* pursuant to 30 CFR part 290 to the Director [of MMS ("Director")] . . . and subsequently to the Interior Board of Land Appeals under 30 CFR part 290.7 . . ." before seeking judicial review.) (citation omitted).

The jurisdictional character of the timely filing requirement is well established.  *See Friends of the River*, 146 IBLA 157, 161 (1998) ("timely filing of a notice of

appeal is a jurisdictional requirement and the failure to file timely mandates dismissal") (citation omitted); *Ron Williams Constr. Co.*, 124 IBLA 340, 341 (1992) (same) (citation omitted); *Nabesna Native Corp., Inc.*, 83 IBLA 82, 85 (1984) ("The timely filing of a notice of appeal is jurisdictional and the Board has no authority to waive a jurisdictional requirement[,]" and "[b]y regulation, no extension for filing a notice of appeal may be granted and dismissal is mandatory.") (citation omitted); *Lynn Dahle*, 58 IBLA 73, 74 (1981) ("[A] failure to file timely under the circumstances [(filing within grace period)] is jurisdictional and mandates summary dismissal.") (citations omitted); *see also Bowles v. Russell*, 551 U.S. 205, 207, 214 (2007) (30-day time limit for filing appeal is "mandatory and jurisdictional") (citation omitted).  The jurisdictional nature of the timely filing requirement is part of a longstanding policy for administrative review.  *McPeek Mining v. Office of Surface Mining Reclamation & Enforcement*, 101 IBLA 389, 392 (1988) ("In the preamble to the rulemaking that amended 43 C.F.R. § 4.1162, Under Secretary [Ann W. McLaughlin] expressly reaffirmed Departmental policy that compliance with time limits for initiating administrative review is a 'jurisdictional prerequisite' to administrative review[,]" and that dismissal is mandatory for failure to comply.) (citing 51 Fed. Reg. 16319, 16320 (May 2, 1986)).

The timely filing requirement is also strictly enforced. *See Am. Petroleum*, 160 IBLA 59, 71-72 (2003) and discussion of cases strictly enforcing timely filing requirement and concluding that failure to timely file strictly mandates dismissal, *infra* at Section C, Deference.

Merit simply did not file an appeal within thirty days as it must have done pursuant to 30 C.F.R. § 290.3 if it desired a hearing on the merits of the Order to Perform. Tr. 30. Such timely filing is a prerequisite to jurisdiction. Merit cannot claim the right to a hearing on the merits long after the time limit for appeal had expired.

> ### 3.    The requirement in 30 C.F.R. § 290.3, that notices of appeal be timely filed, is binding upon MMS, and on the Office of Hearings and Appeals, and may not be waived.

"Courts have held consistently that a duly promulgated regulation has the force and effect of law, and is binding upon all Departmental officials, including this Board and the Secretary, and may not be waived." *Joseph J. C. Paine*, 83 IBLA 145, 147 (1984) (citing *Vitarelli v. Seaton*, 359 U.S. 535 (1959); *Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Chapman v. Sheridan Wyoming Co.*, 338 U.S. 621 (1950); *McKay v. Wahlenmuier*, 226 F.2d 35 (D.C. Cir. 1955); *Associates v. City of Newark*, 424 F. Supp. 984 (D.N.J. 1977); *Wilfred Plomis*, 34 IBLA 222 (1978)); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 301-02 (1979) (A regulation has the "force and effect

36

of law" and is "binding" where it "affect[s] individual rights and obligations" and is "rooted in a grant of such power by the Congress and subject to limitations which that body imposes."); *Beverly Health & Rehab. Servs. v. Thompson*, 223 F. Supp. 2d 73, 99 (D.D.C. 2002) (same). The Department of Interior and the OHA are bound by 30 C.F.R. § 290.3. The regulation's jurisdictional threshold cannot be waived.

### 4. The doctrine of administrative finality precludes reconsideration of the order to perform.

The jurisdiction of the OHA in this case is also limited under the doctrine of *res judicata* or administrative finality. Although *res judicata* is a doctrine that ordinarily applies only in judicial proceedings, it has also been held to apply in the administrative context. "The principle [of *res judicata*] is as much needed for administrative decisions as for judicial decisions. To the extent that administrative adjudications resemble courts' decisions–a very great extent–the law worked out for courts does and should apply to agencies." 4 K. Davis, Administrative Law Treatise, 78 (2d ed. 1983); *see also*, *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.") (citation omitted); *McCulloch Interstate Gas Corp. v. Federal Power Comm'n*, 536 F.2d 910, 913 (l0th Cir. 1976) ("A party may not collaterally

37

attack the validity of a prior agency order in a subsequent proceeding.") (citation omitted).

> [A]s a general rule, the principle of administrative finality precludes reconsideration in a later case of matters resolved finally for the Department in an earlier appeal.

*Bolack Minerals Co. v. Norton*, 370 F. Supp. 2d 161, 168 n.6, 169 (D.D.C. 2005).

Significantly, the IBLA has recognized the importance of administrative finality. "As a general rule, the doctrine of administrative finality, which is the administrative counterpart of the principle of *res judicata*, precludes reconsideration of a decision of an agency official when a party . . . had an opportunity to obtain review within the Department and no appeal was taken or an appeal was taken and the decision was affirmed." *See Kirby Exploration*, 143 IBLA 133, 139 (1998) (citing *Thermal Energy Co.*, 135 IBLA 291, 305-06 (1996)). Also, "[t]he doctrine of administrative finality is designed to achieve orderliness in the administration of the public lands as well as finality of decisions which have been closed finally and have not been appealed or otherwise attacked." *P&K Coal v. Office of Surface Mining Reclamation*, 98 IBLA 26, 33 (1987) (internal quotation omitted) (quoting *Union Oil Co.*, 71 I.D. 169 (1964)); *Hickel v. Oil Shale Corp.*, 400 U.S. 48, 50 & n. 3 (1970) (cancellation of shale oil mining claims, even if erroneous, were *res judicata* and not subject to later attacks, because the Commissioner of the General Land Office had

jurisdiction at the time he canceled the claims and an appeal was not taken). These IBLA cases stand clearly for the proposition that an appeal foregone can and must foreclose future argument of those issues under the doctrine of administrative finality.

By failing to file an appeal within the 30-day time limit established by 30 CFR Part 290, Merit allowed the OTP to become final. The review of the merits of the OTP which Merit later sought was only available through the means of a timely appeal. That opportunity had passed.

**5.    The exceptions to the doctrine of administrative finality do not apply to Merit in this case.**

The doctrine of administrative finality permits "[r]eexamination of a decision which has become final . . . *only* upon a showing of compelling legal or equitable reasons, such as violations of basic rights of the parties or the need to prevent an injustice." *Turner Bros., Inc., v. Office of Surface Mining Reclamation & Enforcement*, 102 IBLA 111, 121 (1988) (emphasis added) (citations omitted); *Helit v. Gold Fields Mining Corp.*, 113 IBLA 29, 308 (1990); *Lloyd D. Hayes*, 108 IBLA 189, 193 (1989); *cf. Bowles*, 551 U.S. at 214 (Rejecting the "unique circumstances" doctrine, the Supreme Court state that "this Court has no authority to create equitable exceptions to jurisdictional requirements[.]").

Merit has made no such showing, however, and cannot on the facts of this case. The cases in which the IBLA has found the potential for injustice sufficient to

reexamine final decisions have involved real issues of due process or special regulations, unlike the situation here.  Merit has not been the victim of two contradictory MMS Orders, as in *Walter Van Norman, Jr.*, 114 IBLA 56, 65 (1990) (concurring opinion), or *Amoco Prod. Co.*, 145 IBLA 281, 287 (1998).  MMS made no admission of error in its Order nor has it offered to correct any alleged error.  *See, United States v. Diana J. Foley*, 142 IBLA 176, 190 (1998). There are no new parties or new issues in later proceedings that were not before MMS.  *See Heirs of Herculano Montoya*, 137 IBLA 142, 146 (1996).  There is no allegation (nor can there be, based on the current record) that Merit was never served with the MMS Order. *See Heirs of George Martinez, Heirs of Arthur Chavez*, 103 IBLA 375, 378 (1988).  There is no allegation that MMS lacked authority to issue its Order as a matter of law.  *See Thermal Energy Co.*, 135 IBLA at 305-06.

Moreover, the requirement that untimely filed notices of appeal be dismissed has been strictly enforced even against appellants whose filings were barely late, much less not filed at all.  *See Apache Corp.*, 152 IBLA 30, 2000 IBLA LEXIS 10, *9-10) (dismissing appeal filed 1-day late); *U.S. Forest Serv.*, 124 IBLA 336, 339 (1992) (same); *cf. United States v. Locke*, 471 U.S. 84, 100-01 (1984) (strictly adhering to statutory filing requirements so as to preclude even 1-day late filing).  Such strict enforcement has not been found to rise to the level of injustice necessary to invoke an

40

exception to the doctrine of administrative finality. *Phillips Petroleum*, 147 IBLA 363, 367-68, 370-71(1999) (declining to find "compelling legal or equitable reasons" or apply the doctrine of equitable estoppel where company devoted time and resources to prosecuting their appeal and had no indication during four years of proceedings on the merits that a question of untimely filing even existed).

In contrast, Merit was not late in filing–it didn't file at all. It failed completely to meet the requirement under 30 C.F.R. § 290.3 that any notice of appeal be filed within 30 days. Merit conceded that if it "had brought an untimely appeal of an Order to Perform to the [MMS] Director under [Part] 290, then the *Apache* decision would apply to require dismissal of that appeal." Supp. Resp. to MMS Mot. to Dismiss at 7, *Merit Energy Co. v. Mineral Mgmt. Serv.* (IBIA 2000) (No. MMS 99-7). Obviously Merit should be no better off for having failed to file entirely than if it had filed late and the appeal had been dismissed. *See Oryx Energy Co.*, 137 IBLA 177, 185 (1996) (ruling that "the [legal] validity of the royalty payments upon which the interest charge is based was not timely challenged" where company did not appeal Order pursuant to 30 C.F.R. Part 290); *Santa Fe Energy Co.*, 110 IBLA 209, 210 (1989) ("The doctrine of administrative finality bars consideration [of arguments concerning the validity of underlying royalties assessment] . . . .[where] appellant had an opportunity to appeal . . . but failed to do so."). "Thus, the doctrine of administrative

41

finality precludes reconsideration of the appropriateness of the underlying late royalty payments[.]" *Oryx Energy Co.*, 137 IBLA at 185.

Merit cannot make a *prima facie* case or prove any injustice as a matter of law. In fact, the only "injustice" in this case would occur if the IBLA's ruling were allowed to stand. That injustice would be to those appellants that followed the 30 C.F.R. Part 290 procedures for appeal of an Order. They would be penalized for not sleeping on their rights while Merit was rewarded for doing in a penalty hearing on a NON what it should have done earlier. OHA cannot expand its jurisdiction to reward Merit for first ignoring the MMS Order and then attempting a challenge that it is barred from making as a matter of law.

### C.      Deference to the IBLA Ruling Is Unwarranted.

The district court erred in concluding that the IBLA's decision was entitled to deference because that decision was inconsistent with the statutory and regulatory framework, prior and subsequent positions of the agency, and the doctrine of administrative finality.

An agency's interpretation of its own regulations generally is entitled to "substantial deference," *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (citation omitted), and is accorded "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997)

42

(citation omitted). Here the IBLA's peculiar construction of FOGRMA's penalty provisions and their implementing regulations at 30 C.F.R. Part 241 are both plainly erroneous and inconsistent with the regulation itself as well as with other integrally related regulations. Agency action is arbitrary and capricious if, *inter alia*, the agency "entirely failed to consider an important aspect of the problem" in rendering its decision. *Nat'l Assoc. of Home Builders v. Defenders of Wildlife*, 551 U.S. 646, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)); *Eagle Broad. Group, Ltd. v. FCC*, 563 F.3d 543, 551 (D.C. Cir. 2009) (applying this standard to agency adjudication). The IBLA's impermissible conflation of the Part 290 and Part 241 processes, despite their separate purposes and distinct subject matters, is enough to make deference to its ruling inappropriate.

But the IBLA also failed to consider administrative finality. Administrative finality was addressed and applied by the ALJ in earlier proceedings but those proceedings were merely noted by the IBLA without deliberation or application. The IBLA observed:

> The parties were directed to brief the question of the applicability of the doctrine of administrative finality to the OTP, in the course of which MMS raised the additional issue of whether the Hearings Division had jurisdiction to consider the validity of the OTP even if the doctrine did not apply. Specifically, MMS contended that under 30 C.F.R. §§ 290.3, 290.6, and 290.7, the only avenue for appealing an OTP was to first appeal to the Commissioner of Indian Affairs and then to this Board. Judge Sweitzer found MMS' argument persuasive and, accordingly, by

43

order dated November 16, 2001, Judge Sweitzer ruled that the Hearings Division lacked jurisdiction to consider the OTP . . . .  In addition, he determined that, because Merit had had an opportunity to appeal the OTP, the exclusion of evidence relating to its validity did not constitute a denial of any statutory or regulatory rights or a denial of due process, as Merit had urged.

*Merit*, 172 IBLA at 141.

Surprisingly, the IBLA nevertheless remanded to the Hearings Division for a full hearing in which Merit would be allowed to "contest its underlying liability, which [according to the IBLA] includes the . . . substance of the OTP." *Id.* at 156. Merit's second bite at the apple–effectively attempting to exercise its expired right to appeal in a forum that lacked jurisdiction– as not in accordance with the law.  The IBLA's ruling allowed Merit to enjoy treatment not available to similarly situated lessees who timely filed and deprived Jicarilla of royalty revenue upon which it relies for essential government services.[10]

The IBLA discarded the well-established practice of strict adherence to time limits for appeals.  *See Am. Petroleum Energy Co.*, 160 IBLA at 71-72 (IBLA "has consistently held that . . . if an appeal is not timely filed in the office of the officer who made the decision, the appeal must be dismissed . . . and strict adherence to the

---

[10] Royalties from Jicarilla's oil and gas leases are of vital importance, as they constitute the primary source of revenue used to pay for essential government services on the Jicarilla Apache Reservation, such as police, tribal courts, health care, and education. Compl. ¶7,  No. 8-00316 (D.D.C. Feb. 25, 2008), ECF No.1.

rule is required."); *see also Lynn Dahle*, 58 IBLA at 74 ("Although this Board is generally reluctant to take any action which would preclude review of appeals on the merits, the purpose of the rule is to establish a definite time when administrative proceedings regarding a claim are at an end in order to protect the public interest, and strict adherence to the rule is required.") (citing *Browder v. Dir., Ill. Dep't. of Corr.*, 434 U.S. 257, 264 (1978)); *Save Medicine Lake Coal.*, 156 IBLA 219, 228 (2002) (same).

Moreover, "an agency's unexplained departure from precedent must be overturned as arbitrary and capricious." *Comcast Corp. v. FCC*, 526 F.3d 763, 769 (D.C. Cir. 2008) (citation omitted). The precedent here was a long history of consistently dismissing administrative appeals untimely filed. *See Save Medicine Lake Coal.*, 156 IBLA at 228 ("Board lacks any jurisdiction to entertain [an] appeal" that "is filed more than 30 days after the appellant has had actual notice" and "must be dismissed.") (citations omitted); *U.S. Forest Serv.*, 124 IBLA 336, 339 (1992) (timely filing "necessary" to establish Board's jurisdiction, late filing "deprives the Board of jurisdiction" and "necessitates dismissal"); *Walter Van Norman*, *Jr.,* 114 IBLA at 62 ("well established" that MMS dismissal of late filed notice of appeal will be affirmed by Board, which has "strictly interpreted this requirement") (citations omitted). The Department of Interior Board of Land Appeals has held that late filing

45

of a notice of appeal to the Director, pursuant to 30 C.F.R. § 290.3, requires dismissal just as failure to timely file notice of appeal under 43 C.F.R. § 4.411 deprives the Board of jurisdiction.  *See Murphy Oil Corp.*, 147 IBLA 40, 41 (1998); *BLM v. Fallini*, 136 IBLA 345, 348 (1996) (timely filing "essential" to exercise of Board's jurisdiction and "necessary for the orderly administration of Departmental business").

Moreover, "there is a presumption in favor of finding harmony between two regulations dealing with similar subjects." *Kearfott Guidance & Navigation Corp. v. Rumsfeld*, 320 F.3d 1369, 1377 (Fed. Cir. 2003) (citation omitted).  Again the IBLA's misinterpretation of the scope of a Part 241 NON hearing made Part 290 administrative appeals (and their time limits) optional.  The IBLA failed utterly to harmonize the two regulations and left the Part 290 time limit an empty shell.

While "[d]eference is particularly appropriate when the agency interpretation has been consistently applied," *Gose v. United States Postal Serv.*, 451 F.3d 831, 837 (Fed. Cir. 2006) (citing *Ehlert v. United States*, 402 U.S. 99, 105 (1971)), an agency's interpretation is accorded less deference when it conflicts with an earlier pronouncement of the agency.  *Id.* (citing *Thomas Jefferson Univ.*, 512 U.S. at 515), or where evidence indicates that the proffered interpretation runs contrary to agency intent at the time of promulgation.  *Id.* 838 (citing *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988)); *Gonzales v. Oregon*, 546 U.S. 243, 258 (2006) (citation omitted).

46

Deference here should be to the consistent practice of the agency in adhering strictly to the Part 290 time limit, not to the IBLA's strained construction of Part 241 that conflicts utterly with that longstanding practice and flies in the face of the agency's responsibility to promulgate rules faithful to the legislature's intent in enacting FOGRMA and later RSFA. "An agency interpretation that effectively eviscerates regulatory language [such as the Part 290 time limit] is *per se* inconsistent with the regulation and may be accorded no deference." *Gose*, 451 F.3d at 840.

The IBLA decision followed close on the heels of the invalidation of the agency's major portion pricing methodology (in separate litigation). That methodology was an integral part of the contested order at issue here. The timing of the IBLA decision gives rise to the suspicion that the Board's interpretation was nothing more than a "*post hoc* rationalization" advanced by the agency. *Cf. Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-67 (2012) (citation omitted).

Finally, the IBLA's interpretation is not "persuasive in its own right," *cf. Christopher*, 132 S. Ct. at 2170. The IBLA interpretation fails to examine in any meaningful way the very "underlying liability" language on which its ruling turns and as a result eviscerates the appeal procedures of Part 290 because they would become superfluous if a party could simply ignore those time limits with impunity, wait to see

47

if MMS issues a NON, and if so bring its appeal then.

The district court erred in deferring to the IBLA and should be reversed.

### D.    Righting a Wrong – Proposed Rule Would Supercede the IBLA's *Merit* Decision.

On July 22, 2013, as Jicarilla was preparing appellant's brief in this case,

ONRR and OHA published in the Federal Register notice of a proposed rule for

"Clarification of Appeal Procedures."  78 Fed. Reg. 43843 (July 22, 2013). The

agency proposes to add a new 30 C.F.R. §1290.111 to read as follows:

> §1290.111 What happens if I do not pay or appeal an order?
> If you neither pay nor appeal an order under this part, that order is the final decision of the Department, you have failed to exhaust administrative remedies as required under §1290.110(a), and you may not contest the validity or merits of that order in any subsequent proceeding to enforce that order under 30 U.S.C. 1719 and part 1241 of this chapter.

*Id.*  43846.

In its explanation of proposed amendments, ONRR states:

> Finally, the rule proposes to add a new §  1290.111 that would apply to orders involving any Federal and Indian mineral leases. This amendment would supersede the IBLA decision in *Merit*, 172 IBLA 137 (2007), *aff'd*, *Jicarilla Apache Nation v. Dept. of the Interior*, No. 10–2052 (JDB), 2012 U.S. Dist. LEXIS 137421 (D.D.C. Sept. 26, 2012).  In *Merit*, when Merit did not pay or appeal an ONRR order to pay royalty, ONRR issued a notice of noncompliance under section 109(a) of the Federal Oil and Gas Royalty Management Act (FOGRMA), 30 U.S.C. 1719, to enforce the order. Merit then requested a hearing on the record on the notice of noncompliance under FOGRMA section 109(e), 30 U.S.C. 1719(e), and the former 30 C.F.R. part 241 (now part 1241) before the Hearings Division of the Office of Hearings and Appeals

48

(OHA). However, Merit challenged not only the amount of the potential penalty, but also the merits of the underlying order that it failed to appeal under then 30 C.F.R. part 290, subpart B (now part 1290). The Hearings Division administrative law judge (ALJ) held that Merit could not challenge the merits of the order in a former part 241 hearing because it had failed to appeal the order under former 30 C.F.R. part 290, subpart B.

Merit then appealed the ALJ's decision to the IBLA. The IBLA disagreed with the ALJ and held that the hearing on the notice of noncompliance could address the merits of the order because Merit was entitled to challenge its ''underlying liability'' for penalties under former part 241. 172 IBLA at 149– 51. <u>We believe that giving appellants who do not appeal orders under current 30 C.F.R. part 1290 another avenue of appeal when the agency seeks to enforce an order that was not appealed nullifies the intent of part 1290. It also undermines the requirement to exhaust administrative remedies by relieving a party of the consequences of failing to do so with respect to the initial order.</u> Therefore, this proposed rule would make clear that, if you receive an ONRR order and you neither pay nor appeal that order under 30 C.F.R. part 1290, the order is the final decision of the Department and you may not contest the merits of that order in any subsequent proceeding seeking to enforce the order under 30 C.F.R. part 1241.

78 Fed. Reg. at 43844 (emphasis added). Jicarilla avers that this proposed rule serves to reiterate, like belts and suspenders, what was already commonly known and apparent: the IBLA's decision in *Merit* was a mistake and misinterpreted Interior's regulations.

### E.    Disparate treatment of lessees.

As noted previously, MMS issued a total of 39 virtually identical OTPs to Jicarilla's lessees, directing them to apply the Jicarilla major portion methodology to

49

recalculate the value of gas produced and sold from January 1984 through June 1995. *Vastar*, 613 F.3d at 1115.  The OTP that Merit was allowed to belatedly contest was one of those 39 virtually identical OTPs issued to producers of natural gas from the Jicarilla Reservation.  These lessees of Indian and federal lands must have confidence in the sanctity of the law at any particular time.  The producers who played by the rules by timely filing administrative appeals under Part 290 must not be penalized for their compliance while Merit is rewarded for its flagrant disregard for the same rules–dragging its feet, waiting for the Department to change its mind about the Major Portion Methology. Merit stands alone in its effort to bend the rules and curry special favor.  No one else is relying on this unjust, inequitable, and suspiciously peculiar interpretation of the law.  Tr. 32.  As Merit itself admitted in the district court, it could find no other appeals filed under Part 241.  *Id.*  Accordingly by denying Merit its undeserved special treatment, the court will not be slamming the door on other litigants.

###     F.     Trust duty.

It is well-settled that "the Government in its dealings with Indian tribal property acts in a fiduciary capacity." *Cobell v. Norton*, 240 F.3d 1081, 1098 (D.C. Cir. 2001) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 194 (1993)).  The Linowes Commission noted that "the Federal government has a special responsibility as trustee for proper

management of Indian natural resources." Linowes Report at 6. Accordingly, FOGRMA states that the "Secretary should aggressively carry out his trust responsibility in the administration of Indian oil and gas." 30 U.S.C. § 1701(a)(4); *cited in BP America Prod. Co.*, 549 U.S. at 100 (same).

Agencies' fiduciary responsibilities are defined by the contours of the relevant statutes and regulations. *See United States v. Mitchell* (*"Mitchell II"*), 463 U.S. 206, 224 (1983). MMS royalty regulations acknowledge the United States' trust responsibility with respect to the management of Indian oil and gas, providing that the regulations are "intended to ensure that the United States discharges its trust responsibilities for administering Indian oil and gas leases under the governing Indian mineral leasing laws, treaties, and lease terms. 30 C.F.R. § 1206.50(a)(3).

The government has control over tribes' oil and gas resources under regulations that are comparable in scope to the timber regulations considered in *Mitchell II*, a seminal tribal breach of trust case. *Compare*, e.g., 25 C.F.R. Part 163 (1999) (timber) *with* 25 C.F.R. Part 211 (2012) (energy and minerals, including oil and gas). Both sets of regulations require the Secretary to, respectively, approve timber sales contracts and oil and gas leases and to supervise the performance of contractors and lessees.

The United States has a "moral obligation[] of the highest responsibility and trust" to Indian tribes and its "conduct, as disclosed in the acts of those who represent

51

it in dealings with the Indians, should therefore be judged by the most exacting fiduciary standards." *Seminole Nation v. United States*, 316 U.S. 286, 297 (1942); *see also Jicarilla Apache Tribe v. Supron Energy Corp.* ("*Supron*"), 728 F.2d 1555, 1563 (10th Cir. 1984) (Seymour, J., concurring in part and dissenting in part), *adopting as majority as modified en banc*, 728 F.2d 855 (10th Cir. 1986), *supplemented*, 793 F.2d 1171 (10th Cir. 1986), *cert. denied*, 479 U.S. 970 (1986) (Secretary of the Interior must act as a fiduciary in the administration of tribal oil and gas reserves); *Cobell v. Norton*, 240 F3d. 1081, 1099 (D.C. Cir. 2001) (same) (citing *Supron*), *Kenai Oil v. Dep't of Interior*, 671 F.2d 383, 387 (10th Cir. 1982) (In carrying out . . . "his trust responsibilities to the Indians in leasing tribal lands[,] . . . the Superintendent must take the Indians' best interests into account[.]"); 64 Fed. Reg. at 26244 ("[T]the standards that we apply, and must apply, to Indian leases are different from those applied to Federal leases. We have a trust responsibility to Indian lessors[.]").

The district court accurately noted that the rule that requires the government, where there is more than one reasonable interpretation of a rule, to choose the one that is in the best interest of an Indian tribe, "seems to have a special force in situations where you're dealing with some provision that only applies to Indian tribes. Here that's not what we have. We're dealing with provisions that apply to all leases, not just Indian leases." Tr. 6. Quite so, and here the Department of Interior as trustee for

52

Indian lands and public lands owes a trust duty to both Indian tribes and to the American people to administer oil and gas leases for both consistent with its fiduciary obligations.[11]

## CONCLUSION

Merit should be held to the requirements of the OTP: that it perform restructured accounting as prescribed and pay to Jicarilla any additional royalties due. The ruling of the district court should be reversed and that of the IBLA vacated, and the case remanded to the Hearings Division for a hearing limited to the NON with respect to penalties.

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Corel WordPerfect in 14-point Times New Roman type style and contains 13,029 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32(a)(1).

/s/ Donald H. Grove
Attorney for Plaintiff-Appellant

---

[11] As noted by the House Committee on Oversight and Government Reform in its report, *Teapot Dome Revisited: Dereliction of Fiduciary Duty at the Interior Department*, "Interior owes a fiduciary duty to the American people." Staff Report, U.S. House of Representatives 111th Congress (2009).

53

## CERTIFICATE OF SERVICE

I certify that on this 5 day of August, 2013, I filed the foregoing Appellants'
Brief electronically with the Clerk of the Court using the CM/ECF System. I further
certify that on this day I hand-delivered the required paper copies to the Court. I
further certify that counsel for Defendant-Appellee and Defendant-Intervenor are
registered CM/ECF users and will be served via the CM/ECF system. I declare under
penalty of perjury that the foregoing is true and correct. Executed this the 5th day of
August, 2013.

/s/ Donald H. Grove
Counsel for Plaintiff-Appellant